EDWIN P. SELPHO and WILLIAM E. SELPHO, Appellants, v. THE CITY OF BROOKLYN, Respondent.

*Brooklyn — power of the commissioner of city works to determine the form and time of giving a bond to be given by a bidder for public work — he may exact a deposit from the bidder.*

Under the provisions of the charter of the city of Brooklyn (§ 1, title 18 of chap. 583 of 1888) relating to the taking of security for the performance of contracts made with the city, it is left to the wise discretion of the commissioner of city works to determine the amount of the bond to be given by a bidder for such work, the form of the bond, and whether it should be furnished with the bid or after its acceptance.

A provision in the advertisement for proposals for work, requiring a bidder to make a deposit of five per cent, expressly authorized by a city ordinance, does not contravene any provision of the charter.

APPEAL by the plaintiffs, Edwin P. Selpho and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 11th day of February, 1896, upon the decision of the court rendered after a trial at the Kings County Special Term.

*Sidney V. Lowell*, for the appellants.

*Joseph A. Burr, Corporation Counsel*, for the respondent.

Judgment affirmed, with costs, upon the opinion of the Special Term.

All concurred.

The opinion of the Special Term was as follows:

CLEMENT, J.:

This action was brought to recover the amount paid the city for certain assessments for local improvements, alleged to have been discovered to be invalid for jurisdictional errors, though regular on their face. The plaintiff only claims a single jurisdictional error in the several assessments. Counsel have submitted the proceedings in the matter of the grading and paving of Thirty-fifth street, from Third to Fourth avenue, and the proceedings in the other assess-

ments were similar in form. The defect complained of is, that restrictions were imposed on bidders for the work, not authorized by law. In the advertisement for proposals for the work on Thirty-fifth street the commissioner of city works inserted certain provisions, which action is claimed to have been illegal.

I will first consider the provisions as to the security required. Title 18, section 1, of the Revised Charter (Laws of 1888, chap. 583), provides, *inter alia :* " Whenever any work, materials or improvements shall have been duly declared to be necessary by said common council, they shall authorize the department of city works, and it shall be the duty of the department so authorized to advertise in the corporation newspapers, for at least ten days, inviting bids or proposals therefor, under seal, to be sent to the department of city works, which bids or proposals shall be publicly opened and announced, with the name of the bidder, the rate or amount proposed, and the names of the sureties, which sureties shall be the owners of real estate in the city of Brooklyn, in their own right, to the amount of such surety, and shall have held the same for at least one year prior to becoming such surety ; and, before awarding any contract, all the bids or proposals received shall be published for at least six days in the newspapers aforesaid." This is the only provision in the charter which has any reference to the taking of security for the performance of contracts made with the city of Brooklyn ; and, further, no ordinance has ever been passed providing for the taking of bonds. The Legislature, by the section quoted from, recognized the necessity of security, and provided as to the qualifications of the sureties. In the absence of any statute, or of any ordinance providing as to the amount of the bond or as to its form, or whether it should be furnished with the bid or after its acceptance, it would seem to me to be left to the wise discretion of the commissioner of city works. He was bound to take security, for that is required, by inference from the above section. In the exercise of his discretion, the commissioner had no right to impose any restrictions which would prevent fair and honest competition. It will be noticed that in section 1 of title 18 of the Revised Charter the expressions, " name of the bidder " and " names of the sureties " are used. If the legislators only meant that the names of the proposed sureties should be given, they would have so said. It seems to me clear that security was

required to be given when the proposal was submitted, which security should be a guaranty of the bid as well as of the performance of the contract, if awarded to the bidder.

The commissioner of city works, in the proceeding under consideration, fixed the amount of the bond at $1,750, which was only one-half the estimated cost of the work, and required the sureties to agree that, if the contract was awarded to the party proposing, they would become bound, as sureties, for its faithful performance; and, in case the bidder failed to execute the contract, if awarded to him, the sureties would pay the difference between the price proposed and the price at which the contract might be made with any other person.   If the commissioner of city works had the power to determine as to the amount of the bond and its form, I am of opinion that the property owners cannot complain, for it would seem that the commissioner did nothing except what was for their best interest.

The provision in the advertisement calling on bidders for a deposit of five per cent is expressly authorized by an ordinance, and is not in contravention of any provision of the charter.   Such an ordinance was passed under authority of the general welfare clause in the powers granted to the common council.   Up to 1888, section 3 of chapter 721 of the Laws of 1865 was in force, by which it was made a misdemeanor to put in a sham bid.   This section was omitted in the charter of 1888, and the ordinance was passed for the good reason that a cash deposit was more effective to prevent fictitious bidding than the fear of prosecution for a misdemeanor.

I conclude that the proceedings of the commissioner of city works were not in conflict with the law, and that there is no irregularity in the assessments.

Judgment for defendant, with costs.